No. 80-333

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

LARRY STEPANEK,

Plaintiff and Appellant,

-vs-

KOBER CONSTRUCTION AND THE
COUNTY OF YELLOWSTONE, BY AND
THROUGH THE COMISSIONERS THEREOF, et al.,

Defendants and Respondents.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Stephens and Cole, Billings, Montana
Kinnard and Woodward, Billings, Montana
Dave Kinnard argued, Billings, Montana

For Respondents:

Moulton, Bellingham, Longo & Mather,
Billings, Montana
Corinne Courtney and Ward Swanser argued,
Billings, Montana

Submitted: February 20, 1981

Decided: March 11, 1981

Filed: MAR 11 1981

Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Appellant, an employee of a subcontractor hired by the respondent general contractor, appeals from summary judgment granted to the defendants in the District Court. However, appellant limits his appeal to the general contractor, Kober Construction.

In December of 1973, the respondent and Yellowstone County entered into a contract for the construction of the Metra, a multi-purpose recreational facility in Billings, Montana. In January of 1974, the respondent entered into a subcontract with Albert D. Wardell Masonry for the completion of masonry work required in the Metra project. Appellant was injured in a fall from the subcontractor's scaffolding on April 17, 1975.

The trial court granted summary judgment for defendants but failed to state the reasons therefor. Disapproval of such failure has been recently stated in a concurring opinion filed in Big Man v. State of Montana and Case (No. 80-265, decided March 10, 1981). In the future, we ask that the District Courts state the reasons for granting summary judgment. Here we will review all issues argued to this Court.

For purposes of this appeal, all factual disputes must be resolved in favor of appellant, against whom summary judgment was granted. Harland v. Anderson (1976), 169 Mont. 447, 450, 548 P.2d 613, 615.

Defendant and respondent, Kober Construction, will hereafter be referred to as general contractor. Albert D. Wardell Masonry will be referred to as subcontractor.

The primary contract between the general contractor and Yellowstone County required the general contractor to be

"responsible for initiating, maintaining, and supervising all safety precautions and programs" connected with the construction. Consistent with this provision, the general contractor's job superintendent conducted regular safety meetings with all subcontractors on the project and in one instance, the subcontractor was ordered to remove a workman from scaffolding because the general contractor felt the workman's negligent conduct would cause injury.

The subcontract provided that the subcontractor comply with all applicable safety and health laws and further:

". . . provide all safeguards, safety devices, and protective equipment and take any other needed actions on his own responsibility; or as the Contractor may determine reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property in connection with the performance of the work covered herein."

The significant issue raised in this appeal is whether the general contractor owed a duty of care to the appellant and if so, upon what basis. If there was no duty owed, then there can be no issues of material fact and granting of summary judgment was proper. Rennick v. Hoover (1980), ____Mont.____, 606 P.2d 1079, 1081, 37 St.Rep. 308, 310.

Appellant contends the general contractor owed him a duty of care predicated upon (1) control of the subcontractor's work reserved in the subcontract and in fact, exercised by the general contractor; (2) the Scaffolding Act, section 50-77-101, MCA; (3) the Safe Place statute, section 50-71-201, MCA; and (4) the primary contract requiring the general contractor to be responsible for safety on the project.

The general contractor contends (1) control of the subcontractor was neither reserved nor exercised; (2) application of the statutes would be improper because the requisite

-3-

element of control was lacking; (3) safety obligations assumed in the primary contract were delegated; and (4) appellant's contributory negligence bars recovery.

Appellant further contends that if the case is remanded for trial, Occupational Safety and Health Administration (O.S.H.A.) violations should be treated as negligence per se. The effect of those regulations is herein discussed.

GENERAL CONTRACTOR'S CONTROL:

Montana recognizes the general rule that "absent some form of control over the subcontractor's method of operation, the general contractor and owner of the construction project are not liable for injuries to the subcontractor's employees." Shannon v. Howard S. Wright Construction Co. (1979), ____Mont. ____, 593 P.2d 438, 441, 36 St.Rep. 632, 636; 2 Restatement of Torts 2d, section 414 (1965). Both parties rely upon Shannon as the controlling statement of law. Appellant contends that the requisite "control" exists if the general contractor had a nondelegable duty to "control".

A review of the record before us indicates the general contractor's degree of actual control is disputed. First, the subcontract clause purported by respondent to have delegated all safety responsibility to the subcontractor, does not do so. The general contractor reserved right to control safety compliance on the project.

Second, the depositions of the subcontractor and the job superintendent for the general contractor, demonstrate the subcontractor's acquiescence in the general contractor's supervision of the project's safety. The subcontractors attended weekly safety meetings conducted by the general contractor. Subcontractor Wardell complied with the general contractor's request that an employee be removed from the

scaffolding and assigned to work on the ground. However, appellant's claim is not limited by a showing of actual control.

The general contractor assumed contractual obligations under the contract with Yellowstone County. Specifically, the general contractor agreed to maintain and supervise job safety.

Montana has previously held that similar contractual arrangements result in creation of a nondelegable duty. Ulmen v. Schwieger (1932), 92 Mont. 331, 12 P.2d 856. In Ulmen the duty extended to a third person not employed by a subcontractor. Here we must decide if that nondelegable duty extends to employees. We hold that it does, and the basis for our holding is discussed in connection with application of the Scaffolding Act.

APPLICATION OF THE SCAFFOLDING ACT:

Section 50-77-101, MCA, states:

"All scaffolds erected in this state for use in the erection, repair, alteration, or removal of buildings shall be well and safely supported, of sufficient width, and properly secured so as to ensure the safety of persons working on them or passing under them or by them and to prevent them from falling or to prevent any material that may be used, placed, or deposited on them from falling."

The statute does not explicitly state what persons owe the duty imposed. In State ex rel. Great Falls Nat. Bank v. District Court (1969), 154 Mont. 336, 463 P.2d 326, this Court held a landowner bank, not in control of the work involving the scaffold, was not liable to a contractor's employee under the statute. The Court defined the scope of the Scaffolding Act in the following terms:

". . . it is clear to us from the language of the Act construed in the light of its purpose that the legislature intended only to make the injured work-

man whole by granting him relief to the extent of his injuries and damages against the person, firm or corporation having direct and immediate control of the work involving the use of scaffolding." Great Falls Nat. Bank, 154 Mont. 336, 345, 463 P.2d 326, 331.

The court reasoned that section 50-77-102, MCA, and section 50-77-104, MCA, then referred to as section 69-1402, R.C.M. 1947, and section 69-1404, R.C.M. 1947, showed legislative intent to limit the Scaffolding Act to "one in immediate control." The court noted that these two statutes expressly applied only to "owners, contractors, builders, or persons having the direct and immediate control or supervision of any buildings." (Emphasis supplied.) However, the court had to face the issue of nondelegable duty because if the bank owed a duty to control which it could not delegate, then it would be subject to the provisions of the Act. The court referred to previous decisions which were based upon nondelegable duty, i.e., Ulmen v. Schwieger, supra, but distinguished on the basis that they did not involve employees of a subcontractor.

This Court thus began to construct a distinction between employees of a subcontractor and third persons such as the one injured in Ulmen. This distinction reached its climax in Ashcraft v. Montana Power Co. (1971), 156 Mont. 368, 480 P.2d 812. It was there held that, where the Montana Power Co. employed an independent contractor to construct lines, an injured employee of that subcontractor was precluded from suing Montana Power because of the exclusive provisions of the Workmans' Compensation Act. Justice Daly dissented. Justice Haswell did not participate.

In response to Ashcraft, the delegates to the state constitutional convention adopted Article II, Section 16, which,

as ratified, provides in part:

> "The administration of justice. Courts of justice
> shall be open to every person, and speedy remedy
> afforded for every injury of person, property, or
> character. No person shall be deprived of this full
> legal redress for injury incurred in employment for
> which another person may be liable except as to fel-
> low employees and his immediate employer who hired
> him if such immediate employer provides coverage
> under the Workmen's Compensation Laws of this state
> . . ." (Emphasis supplied.)

In moving passage of this section, delegate Murray said:

> ". . . Under Montana law, as announced in the recent
> decision of Ashcraft v. Montana Power Company,
> the employee has no redress against third parties
> for injuries caused by them if his immediate
> employer is covered under the Workmen's Compensa-
> tion Law." TR. of the Mont. Constitutional Conven-
> tion, Volume 7, Part 2 at 5407.

> ". . . The committee believes that clarifying this
> remedy would have a salutary effect on the conscien-
> tiousness of persons who may contract out work to be
> done on their premises." TR. at 5408.

The philosophy behind this section was expressed by

delegate Dahood:

> "We allowed in our bill of rights an amendment to a
> clean and healthy environment. By this provision and
> this amendment we are going to provide for the work-
> ing man a safe environment. How does the law stand
> at the moment? Let me tell you how it stands. And
> some of the big vested corporate interests are now
> using independent contractors because it's reduced
> their cost of operation. If you have some particular
> tough job that you want done on your premises where
> there may be some danger connected with it, what do
> you do, you go out and hire an independent contractor.
> Don't have your employees in that dangerous area be-
> cause if they're hurt or if there's an accident you
> have to pay them Workmen's Compensation. So here's
> the way you do it now that we have immunity from the
> Supreme Court----an immunity neither intended by the
> people nor intended by the legislature. What you do,
> you hire someone on an independent contractor basis
> and their employees are in this dangerous area. You
> don't have to worry about safety anymore. You don't
> have to do anything to make your premises safe. You
> don't have to be concerned about a safe environment
> for the people who are working there to benefit your
> interest." TR. at 5417.

Since ratification of the Constitution employees on a

jobsite are afforded the full legal redress afforded all

members of society except as to fellow employees and their

immediate employer.

The general contractor cites West v. Morrison-Knudsen Co. (9th Cir. 1971), 451 F.2d 493, for the proposition that contractual duties assumed by a general contractor are not owed to the employees of a subcontractor. In West, the federal court interpreted Ulmen and held that, although Montana recognized contractual obligations to be nondelegable, the benefits of this doctrine applied only to third persons and did not apply to employees of subcontractors.

The holding in West was made prior to adoption of Montana's new constitution. Following ratification of the Constitution such distinctions no longer exist.

The general contractor, as a result of its contract with Yellowstone County, originally had control of job safety. This contractual obligation could not be delegated. Ulmen v. Schwieger, supra. Therefore, the general contractor remained in direct control and the provisions of the Scaffolding Act apply.

APPLICATION OF SAFE PLACE STATUTE:

Appellant contends section 50-71-201, MCA, is applicable to general contractors. The Montana Safe Place statute states:

> "Every employer shall furnish a place of employment which is safe for employees therein and shall furnish and use and require the use of such safety devices and safeguards and shall adopt and use such practices, means, methods, operations, and processes as are reasonably adequate to render the place of employment safe and shall do every other thing reasonably necessary to protect the life and safety of employees."

This statute was construed in Shannon. There we held that the term "employer" as used in section 50-71-201, MCA, embraces the term general contractor thereby affording protection of the statute to employees of subcontractors. We stopped short of holding the general contractor owed a

-8-

nondelegable duty to those same employees but affirmed the plaintiff's verdict on the basis of actual control by the general contractor.

We have here held that the law of nondelegable duty is available to appellant. We now reaffirm our holding in Shannon and hold that the provisions of the "safe place to work statute" cover general contractors and that the duties mandated by the statute are owed to employees of a subcontractor if, as here, there is a nondelegable duty arising out of contract.

THE WEIGHT OF O.S.H.A. REGULATIONS:

In this case the subcontractor was cited for violation of O.S.H.A. regulations in connection with the subject scaffolding. Appellant contends that such violations are admissible in evidence and constitute negligence per se.

A violation of a statute or ordinance intended to protect the plaintiff from the injury incurred is generally held to be negligence per se. W. Prosser, Handbook of the Law of Torts, Section 36 at 200 (4th ed. 1971). Custer Broadcasting Corporation v. Brewer (1974), 163 Mont. 519, 522, 518 P.2d 257, 259.

Jurisdictions are divided on the application of a negligence per se rule for the violation of a regulation. The general rule has been to consider the violation as merely evidence of negligence. Kelley v. Howard S. Wright Construction Co. (1978), 90 Wash.2d 323, 582 P.2d 500, held that violation of applicable O.S.H.A. regulations constituted negligence per se. We decline to hold such violations to be negligence per se. Rather such violations may be considered by the trier of fact as evidence of negligence.

CONTRIBUTORY NEGLIGENCE:

The general contractor argues appellant was negligent as a matter of law. This action arose prior to the adoption of comparative negligence.

The record is not fully developed on the issue of contributory negligence. There is evidence that appellant did not construct the faulty scaffolding. Further, appellant either performed his work or risked being terminated. Under these circumstances he is not contributorily negligent as a matter of law. Shannon at 440, 441.

CONCLUSION:

In summary we hold (1) the general contractor, Kober Construction, had a nondelegable duty to comply with the provisions of its contract with Yellowstone County; (2) the provisions of the Scaffolding Act, section 50-77-101, MCA, and the Safe Place statute, 50-71-201, MCA, are applicable to the general contractor who remained in direct control under the doctrine of nondelegable duty; (3) O.S.H.A. regulations, and the violation thereof, are only evidence of negligence; and (4) appellant was not guilty of contributory negligence as a matter of law.

The District Court erred in granting summary judgment in favor of Kober Construction. The case is remanded to the District Court for trial under the legal principles enunciated herein.

_____
Justice

We concur:

_____

_____
Justices

-10-

_Daniel J. Shea_

_John C. Shelby_

Justices