Daryl CRANE; Pamela Crane,
Plaintiffs–Appellants,

v.

CONOCO, INC., a corporation,
Defendant–Appellee,

and

Nunnallee–Cantwell, Inc., a foreign
corporation, Defendant.

No. 93–35661.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 1994.

Decided Dec. 2, 1994.

Jeffrey T. Renz, Jeffrey T. Renz & Associates, Missoula, MT, for plaintiffs-appellants.

David A. Veeder, Veeder Law Firm, Billings, MT, for defendant-appellee.

Before: LAY,\* TROTT and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## OVERVIEW

The Cranes appeal the district court's grant of summary judgment in favor of Conoco, Inc., on all claims relating to injuries Daryl Crane sustained while working for an independent contractor at Conoco's oil refinery. We affirm the district court.

## FACTS AND HISTORY OF PROCEEDINGS

On September 10, 1988, Plaintiff–Appellant Daryl Crane ("Crane"), an employee of Scaffold Rental and Erection ("SRE"), was injured in the course of making repairs at the Conoco Refinery in Billings, Montana, pursuant to a contract between Conoco and SRE. In order to survey the work site and compose a list of working materials required to repair a fire-damaged condensate unit, Crane had climbed onto a pipe rack, a permanent fixture of the refinery consisting of lines of pipe joining pieces of equipment. While standing on the pipe rack, about 16–20 feet off the ground, Crane noticed workers suddenly throwing down their tools, running, and yelling, "Get out! Get out!" Panicking, he tried to reach the ground by lowering himself onto a heat exchanger located below the pipe rack, fell, and suffered a herniated disc.

Later in the day, after the workers had resumed their duties, and Crane had returned to his position on the pipe rack, workers again starting running and shouting. This time Crane was better prepared to exit, and he reached the ground safely with the help of a ladder standing against a scaffold near the pipe rack. Crane asserts that the workers reacted in response to fires which broke out at the refinery that day. Conoco maintains that Crane never saw the fires, and that other workers' reports of fire are inadmissible hearsay; nevertheless, Conoco's records show, and Conoco acknowledges, that several small fires broke out on the morning Crane was injured, one of them 100–200 feet from where Crane was working.

On August 15, 1991, the Cranes filed suit for damages against Conoco and Nunnallee–Cantwell, Inc., in the United States District Court for the District of Montana. On April 27, 1993, the district court entered an order for summary judgment in favor of Conoco and Nunnallee–Cantwell, rejecting all of the Cranes' claims. The Cranes concede that the claims against Nunnallee–Cantwell are not factually supported, and agree that judgment was properly entered in Nunnallee's favor. They appeal the judgment with regard to Conoco.

## DISCUSSION

### A. Standard of Review

A grant of summary judgment is reviewed *de novo*. *Jones v. Union Pac. R.R.*, 968 F.2d 937, 940 (9th Cir.1992). A grant of summary judgment should be affirmed only if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir.1989); Fed.R.Civ.P. 56(c). The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. *Federal Deposit Ins. Corp. v. O'Melveny &*

---

\* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

*Meyers,* 969 F.2d 744, 747 (9th Cir.1992), *rev'd on other grounds,* — U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

### B. Strict Liability

■ The Cranes allege that Conoco is strictly liable for Crane's injuries under sections 519 and 520 of the Restatement (Second) of Torts, as adopted by the Supreme Court of Montana, *Matkovic v. Shell Oil Co.,* 218 Mont. 156, 707 P.2d 2, 4 (1985), because Conoco was engaged in the "abnormally dangerous activity" of refining and storing volatile, flammable and explosive substances, which presents a risk of "catastrophic fire or explosion." Section 519 provides that:

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Assuming, without deciding, that oil refinery operations are, as the Cranes contend, "abnormally dangerous" in the sense of section 519(1), we note that liability is limited under section 519(2) to "the kind of harm, the possibility of which makes the activity abnormally dangerous." The risk of catastrophic fire or explosion is what would make oil refinery operations abnormally dangerous. Crane's injury arose not from catastrophic fire or explosion, but from his attempt to get down off the pipe rack and escape the area in response to the sight of other workers fleeing some unknown danger.[1] Because Crane's injury did not result from the "kind of harm, the possibility of which makes the activity [in this case, operating an oil refinery] abnormally dangerous," sections 519 and 520 of the Restatement (Second) of Torts do not here apply. We therefore affirm the district court's award of summary judgment for Conoco on this issue.

### C. Liability under the Montana Scaffolding Act

■ The Cranes contend that Conoco violated the Montana Scaffolding Act, M.C.A. §§ 50–77–101 to 106, which requires that: [a]ll scaffolds erected in this state for use in the erection, repair, alteration, or removal of buildings shall be well and safely supported, of sufficient width, and properly secured so as to ensure the safety of persons working on them or passing under them or by them and to prevent them from falling or to prevent any material that may be used, placed, or deposited on them from falling.

*Id.* § 50–77–101. The parties dispute the applicability of the Scaffolding Act on the following counts: 1) Can the pipe rack be construed as a scaffold for the purpose of the Act under Montana law?; and 2) Does Conoco's status as landowner render it liable under the Act? We need not resolve either of these questions. The Cranes have produced no evidence that the Act was violated. The Cranes do not show, or even contend, that there was any fault in the design or construction of the pipe rack, or that the injury sustained by Daryl Crane was in any way attributable to the design or construction of the rack itself.

■ The Cranes' contention that "at its most fundamental level, Conoco's omission [with regard to the Scaffolding Act] lay in not providing a safe means of egress from Mr. Crane's position of peril," is not relevant to the Scaffolding Act, which requires only that scaffolds be "safely supported" and "properly secured." As the district court correctly observed, "the alleged lack of safe egress does not constitute a violation of the Scaffolding Act." It is, moreover, undisputed that there *was* a safe means of egress available to Crane, although he was either

---

1. Throughout his brief, Crane maintains that his "foreseeable" panic could have been prevented if he had been informed that fires such as the ones occurring on the day of his injury were commonplace, and if he had known the steps to take in case of emergency. But the strict form of liability arising under the rules stated in §§ 519 and

520 is to be distinguished from that arising under negligence. *See* Restatement (Second) of Torts § 520 cmt. b. Conoco's alleged failure to provide warnings or safety instructions must be considered in light of a showing that it breached some duty of care, an issue which does not fall within the ambit of §§ 519 and 520 of the Restatement.

not aware of or prepared to use it on the occasion of his first descent from the pipe rack.

For the reasons listed above, we affirm the district court's award of summary judgment with regard to the claim involving the Montana Scaffolding Act.

### D. Conoco's Duty to Maintain a Safe Workplace

 The Cranes allege that Conoco breached its duty to maintain a safe workplace under Montana statutory and common law. Under Montana common law, the general rule is that landowners and general contractors are not liable for injuries to the employees of independent contractors or subcontractors. *Shannon v. Howard S. Wright Constr. Co.*, 181 Mont. 269, 593 P.2d 438, 441 (1979). This rule, however, has been described as "a preamble to the catalog of its exceptions." *Id.* (internal quotation omitted). In Montana, those exceptions have been designated as follows: "1) where there is a nondelegable duty based on a contract; 2) where the activity is 'inherently or intrinsically dangerous;' and 3) where the general contractor negligently exercises control reserved over a subcontractor's work." *Umbs v. Sherrodd, Inc.*, 246 Mont. 373, 805 P.2d 519, 520 (1991) (citing *Micheletto v. State*, 244 Mont. 483, 798 P.2d 989, 991 (1990)); *see also Kemp v. Big Horn County Elec. Co-op, Inc.*, 244 Mont. 437, 798 P.2d 999, 1001–04 (1990); *Kemp v. Bechtel Constr. Co.*, 221 Mont. 519, 720 P.2d 270, 274–75 (1986). The Cranes allege that each of these exceptions applies. Additionally, the Cranes argue that Conoco is liable under the Montana Safe Place to Work statute which creates a nondelegable duty to provide a safe workplace. *See* Mont. Code Ann. § 50–71–201. We deal with each of these claims in turn.

 The Cranes' attempt to apply the exception for nondelegable duty based on contract is not persuasive. Under Montana law, there is no nondelegable duty based on contract where a subcontractor contractually assumes safety responsibilities, and the contracting employer does not expressly agree to be responsible for "initiating, maintaining or supervising safety programs." *Michelet-*

*to*, 798 P.2d at 992–93. Conoco did not assume any contractual duties regarding SRE employee safety. Rather, the safety provisions set out in sections 16.1 and 16.2 of the contract between SRE and Conoco state that:

> [SRE] shall have the primary responsibility for notifying and training its employees, subcontractors and agents with respect to Company's safety rules and procedures and any other governmental laws or regulations pertaining to the health and safety of workers.... [and] shall designate a responsible person to supervise health and safety matters and to prevent accidents.

Because Conoco did not contractually assume safety obligations towards SRE employees, the exception for nondelegable duties based on contract simply does not apply.

The Cranes next argue that the second exception, regarding inherently dangerous activities, applies according to the rules set out in the Restatement (Second) of Torts §§ 416 and 427, which have been adopted by the Montana Supreme Court. *Kemp v. Bechtel*, 720 P.2d at 275. Section 416 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Section 427 provides:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

We have previously held that "[b]ecause Montana has adopted sections 416 and 427, a

private owner or general contractor has a nondelegable duty to ensure a safe workplace for employees of independent contractors engaged in inherently dangerous work." *McCall v. United States Dep't of Energy,* 914 F.2d 191, 196 (9th Cir.1990). We now review the case before us in light of the Montana Supreme Court's consistent interpretation and application of sections 416 and 427, as set forth most recently in *Kemp v. Big Horn,* 798 P.2d at 1003.

In *Big Horn,* the court held that the use of an aerial lift bucket was not an inherently dangerous activity because standard precautions exist to eliminate the risks involved in using such devices. 798 P.2d at 1004. The court cited *Micheletto,* 798 P.2d at 993–94, and *Kemp v. Bechtel,* 720 P.2d at 275, both of which held that sections 416 and 427 apply only where there are no available standard precautions that might be taken to prevent the risk in question. *Big Horn* at 1003–04.

■ Under Montana law, when risk or danger arises as a result of the owner or contractor's failure to use "standard," as opposed to "special" precautions, the activity in question is, as a matter of law, not inherently dangerous, and the second exception to nonliability does not apply. As the court explained in *Big Horn:*

> In order for § 416 to apply the work must present "a peculiar risk . . . unless special precautions are taken." Section 427 is only applicable to work involving "a special danger . . . inherent in . . . the work." Here, the type of trenching contemplated in the subcontract presented no peculiar risk or inherent danger. Rather, the risk or danger arose out of a failure to use standard precautions.

798 P.2d at 1003 (quoting *Kemp v. Bechtel,* 720 P.2d at 275).

■ In the instant case, the precautions Conoco allegedly should have taken (warnings about fire hazards, safety instruction, indication of escape routes) were, in the words of Cranes' own expert, "standard" rather than "special." Therefore, the district court was correct in finding sections 416 and 427 inapplicable. Because the work in which Crane was involved was not, under Montana law, inherently dangerous, we hold that the second exception to the rule of nonliability was not met.

The Cranes also contend that Conoco is liable for Crane's injuries based on the third exception to the general rule of nonliability, which provides that liability may attach where the contractor or owner has negligently exercised control over the subcontractor's work. The legal basis for the Cranes' contention is section 414 of the Restatement (Second) of Torts, which states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

The Cranes contend that section 414 applies because Conoco contractually reserved the right to order SRE to correct unsafe working conditions. As the court in *Big Horn* observed, however, comment (c) of section 414 explains that:

> for . . . this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports. . . . Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail.

798 P.2d at 1002–03.

■ Under Montana law, an employer's duty under section 414 extends only to the contractual establishment of a safety program. *Micheletto,* 798 P.2d at 995, (citing *Kemp v. Bechtel,* 720 P.2d at 275). Where the contract delegates safety responsibilities to the subcontractor, the employer or general contractor is not liable under the third exception. " '[B]efore liability is found on the basis of control by the general contractor, there must be a contractual provision which establishes that the general contractor has assumed the responsibility for initiating, maintaining and supervising safety precau-

tions....'" *Big Horn,* 798 P.2d at 1003 (quoting *Micheletto,* 798 P.2d at 994).

Like the contract in *Big Horn,* the contract between SRE and Conoco explicitly delegated safety responsibilities to SRE. Conoco's reservation of the right to stop the work does not make it liable under section 414, or activate the third exception under Montana common law.

■ Finally, the Cranes maintain that Conoco is liable under the Montana Safe Place to Work Statute, which requires an employer to provide a safe workplace. Mont. Code Ann. § 50–71–201. Under Montana law, the general contractor or contracting landowner fulfills his obligation under the statute by "exercis[ing] reasonable care in its establishment of the safety program." *Big Horn,* 798 P.2d at 1002 (citing *Bechtel,* 720 P.2d at 276, and following *Micheletto,* 798 P.2d at 994–95). The employer in *Big Horn* was found to have met the statutory requirement by contractually delegating safety precautions to the subcontractor. 798 P.2d at 1002. Likewise, the contract between SRE and Conoco, which is similar in specification and detail to the one cited in *Big Horn,* 798 P.2d at 1001–02, delegates safety responsibilities, including the duty to train employees regarding safety procedures, to SRE. We therefore hold that the Cranes have failed to show that Conoco breached any duty under Mont.Code Ann. § 50–71–201.

In sum, the Cranes fail to show that Conoco is liable under the Montana Safe Place to Work statute or under any of the three exceptions to the general rule of nonliability. We therefore affirm the district court's order of summary judgment on these claims.[2]

E. Liability under OSHA

■ The Cranes assert that Conoco is liable to them for alleged breaches of a number of OSHA regulations. However, OSHA violations do not themselves constitute a private cause of action for breach. 29 U.S.C. § 653(b)(4) ("[n]othing in this chapter shall be construed to ... enlarge or diminish or

affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees"). *See also* 35 ALR Fed. 461, § 2 ("The cases are consistent in holding that [OSHA] does not create a private cause of action for violations of the Act or the regulations thereunder").

■ While some jurisdictions have held that evidence of OSHA violations constitutes negligence *per se, e.g., Walton v. Potlatch Corp.,* 116 Idaho 892, 781 P.2d 229 (1989); *Kelley v. Howard S. Wright Constr. Co.,* 90 Wash.2d 323, 582 P.2d 500, 508 (1978), the Montana Supreme Court has expressly declined to do so. *Stepanek v. Kober Constr. Co.,* 191 Mont. 430, 625 P.2d 51, 56 (1981). We therefore hold that even if the Cranes had produced evidence of OSHA violations on the part of Conoco, such evidence would not create a private cause of action under Montana law.

For the foregoing reasons, the district court's order of summary judgment for defendant Conoco is AFFIRMED.

AFFIRMED.

---

2. Conoco contends that the Montana Safe Place to Work statute is preempted by OSHA. Because we conclude that Conoco did not have a legal

duty towards Crane under Montana law, we do not address this issue.